**David Gerard GOULART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–220–CR.**

Court of Appeals of Texas, Waco.

Feb. 9, 2000.

Rehearing Overruled May 17, 2000.

James R. Jenkins, Waxahachie, for appellant.

Joe F. Grubbs, County and Dist. Atty., Waxahachie, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

The jury had the task of balancing a parent's right to discipline his child against the State's interest in punishing those who injure children, including a parent. The parent claimed he had the right to reasonably discipline his daughter. The jury found that the events amounted to the crime of injury to a child. We are called upon to determine the sufficiency of the evidence where statements made to police in close proximity to the events in question were contradicted at the time of trial. A jury may resolve conflicting testimony by choosing to believe all, part, or none of the testimony of a witness. We affirm the judgment.

## BACKGROUND

David Goulart was tried and found guilty by a jury of the offense of injury to a child. TEX. PEN.CODE ANN. § 22.04(a) (Vernon 1994 & Supp.1999). Goulart was convicted and sentenced to the minimum of two years' confinement. Goulart had a prior felony conviction which made him ineligible for parole. Goulart's motion for a directed verdict in which he complained about the legal sufficiency of the evidence was denied.[1] His motion for new trial, in which he complained about the legal and factual sufficiency of the evidence, was overruled by operation of law.[2] Goulart made a timely appeal.

## APPEAL

In two points of error, Goulart challenges the legal and factual sufficiency of

1. The brief complains of error in denying his "motion for judgment not withstanding the verdict." This is a civil concept. Rule 301 of the Texas Rules of Civil Procedure allows the trial court to disregard a jury verdict and render judgment if a directed verdict would have been proper. TEX.R. CIV. P. 301. In the interest of justice, we will consider his issue as a complaint about the trial court's failure to grant his motion for a directed verdict.

2. Goulart filed a motion for new trial alleging that the evidence is legally and factually insufficient to support the jury's rejection of his right to use force against his child as "reasonable discipline." While it is proper to raise an issue of legal or factual sufficiency in a motion for new trial, our review on appeal remains a legal and factual sufficiency review. Gonzales v. State, 689 S.W.2d 900, 901 (Tex. Crim.App.1985); Jones v. State, 951 S.W.2d 522, 527 (Tex.App.—Beaumont 1997, pet. ref'd). We do not review the denial of the motion for new trial. Id. The proper issue on appeal is whether the evidence is legally or factually sufficient to support the verdict. Today, we do not express an opinion regarding whether a defendant is required to preserve a legal or factual sufficiency complaint in a motion for new trial in order to present it on appeal. See TEX R.APP. P. 33.1; see also Gon-

the evidence to support his conviction of injury to a child. His issues focus on the jury's rejection of his right to use force against his child as reasonable discipline and argues that the jury's verdict is not supported by any evidence or is so against the great weight of the evidence as to be manifestly erroneous and unjust. We review Goulart's issues on appeal as we would review a challenge to the legal and factual sufficiency of the evidence to support the jury's rejection of his right to use force against his child as reasonable discipline.

## FACTS

Tara, the twelve-year-old daughter of Goulart, was punished for not having done the dishes the night before. Tara's mother and sister were both nearby when the punishment took place. Goulart asked Tara to find the belt he used on previous occasions to whip the children. When the belt was not produced, Goulart used the family dog leash instead.[3] Tara would not bend over and "take" her punishment. The punishment exceeded the usual "two licks" given under prior, similar circumstances.

The punishment resulted in welts, bruising, and red marks. Tara was sent to work with Goulart, rather than school. While Goulart and Tara were gone, Tara's mother called the police who took her statement and the statement of Tara's sister, Sara. When Goulart came home at the end of the day, the police arrested him. After the arrest, the police took Tara's statement and took pictures of her bruises, red marks and welts.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

Goulart asserts that it was error for the trial court to deny his motion for new trial

because the evidence is both legally and factually insufficient to sustain his conviction. As stated above, we construe this issue as a challenge to the legal and factual sufficiency of the evidence. Goulart particularly contends that it was error for the jury to conclude that the force used against the child was not reasonable, thus rejecting his assertion that he used reasonable discipline under these circumstances.

### EVIDENCE AT TRIAL

At trial, Tara, her sister Sara, her mother Wanda Jeanice Goulart, and her father, the defendant, David Goulart all provided testimony. Statements made by Tara, Sara, and Wanda the day of the event were authenticated by them and admitted into evidence. Pictures taken of Tara by police were also authenticated by Tara and introduced into evidence. Detective Todd Woodruff, the detective on duty who took the statements of the family and who obtained the arrest warrant for Goulart also testified. The statements made by the family the day of the event were substantially different from their trial testimony.

#### Tara's Statement

According to Tara's written statement, she was being punished for not doing the dishes. She failed to do the dishes because she fell asleep while people were still eating and in the morning was in trouble. Her dad, Goulart, told her that falling asleep was not an excuse and she should get the belt. While she was looking for the belt, he called her back into the room. He was holding the dog leash and he told her to bend over. Initially she did bend over, but moved as he raised his hand to swing the leash. In her statement she claims that she was so scared she could not bend over and that Goulart hit her with the leash on various parts of her body.

zales v. State, 4 S.W.3d 406, 412 (Tex.App.— Waco 1999, no pet.) (Requirement for preservation of complaint of ineffective assistance of counsel.)

3. The jury saw a picture of the leash which appears to be made of woven nylon.

Goulart kept telling her to bend over and finally pulled her onto the couch where he struck her several times upon the buttocks with his hand. At this point her mother tried to put the leash away, but Goulart took the leash and again struck her on the buttocks two times.

After this spanking, Tara went into the kitchen. Goulart followed her into the kitchen and grabbed her under the chin with his hand in a choke hold and pulled her head up. She states that he said, "Don't ever do that to me again or you're out of this house. I am not going to put up with a child that I can't discipline." He then apologized to her and asked her to go to work with him. While this was taking place, her sister and Mother where both crying. Tara states that she wet her panties while he was "whooping" her and that she had done so on a previous occasion when Goulart left bruises on her buttocks. As she left with her Dad, her Mother told her she would call the police.

*The Sister's Statement*

Tara's sister, Sara, also gave a written statement which was introduced at trial. According to Sara, the spanking was a result of Tara not doing the dishes. When Tara would not bend over, Goulart kept hitting her all over with the dog leash. Sara stated that Goulart slapped Tara and threw her on the couch where he held her and continued to hit her. She stated that he then made her bend over and he struck her twice on the buttocks. She claimed that she counted 29 to 30 strikes total. She stated that while Tara was in the kitchen doing the dishes, Goulart came in and grabbed her around the neck and lifted her up onto her "tippy toes." Tara could not breathe and she saw red fingerprints on Tara's neck. Sara says that Goulart would not let Tara go to school because of the bruises. As Sara was leaving for school, she says that she saw red marks on Tara's leg, a blood blister on her hip and bruises on Tara's arms.

*The Mother's Statement*

According to the statement of Tara's mother, Wanda Jeanice Goulart, when Tara admitted that she did not finish the dishes, Goulart said, "That's it, this is not going to happen anymore, I'm going to bust your ass, go get the belt." When she could not find it, he grabbed the leash and told her to bend over. While bending over, Tara tried to block the leash with her hand and pleaded for him not to hit her. Mrs. Goulart claimed that at this point he struck her at least ten times and that the strikes were "very hard." She stated that he then struck Tara across the face with an open hand and knocked her onto the couch. She stated that she tried to intervene but he threatened her. She retreated to the kitchen where Sara told her that she was going to call "911." Mrs. Goulart told her not to make the call. According to Mrs. Goulart's statement, Goulart had Tara's face down into the couch and Tara was saying that she could not breathe. Eventually, Tara was standing up and was told to bend over. Tara did bend over and Goulart gave her "two licks" and told her that if she had bent over in the first place, that was all she would have received.

*Tara's Testimony*

At trial, the testimony of the family changed in several ways. Tara, who was twelve at the time of her testimony, testified that she knew the discipline procedures in her family. When either she or her sister did something they were not supposed to do, they would get a verbal warning first and then would receive two or four "licks" with a belt depending upon the severity of the offense. She testified that, when she realized she had not done the dishes, she knew she was going to get spanked because she had not done them in the past. She could not say when she had been given a verbal warning. She testified that she did not know how many times she was hit, but admitted that it was more than five. Her testimony was that she bruises easily, that her Dad was not in a rage, that he only "kind of pushed" her face into the couch, and that he never

squeezed her chin nor lifted her off of her feet. According to her testimony, the red marks on her neck were because her father's hand slipped while he was making her look at him.

She also testified about a prior spanking earlier in the year which also left bruises and which caused her to wet her panties. It was her testimony that, while this prior spanking hurt, it was not nearly as severe as the event in question. She claimed that she went to work with her Dad because she was afraid that her friends would see the marks during physical education class. She also verified the photographs taken of her bruises, welts, and markings but attempted to explain their causes from binding clothing. Ultimately, she admitted that most of the marks and bruises came from her father.

### The Sister's Testimony

Sara was eleven years of age at the time of her testimony. She verified the discipline procedure used by the family. At the time of trial, Sara did not remember Tara being "thrown" onto the couch, did not remember her mother trying to put the leash away, and did not remember her earlier claim that her sister could not breathe when her father grabbed her neck or chin. It was her testimony that her father only "kind of pushed" Tara onto the couch and that he only lifted Tara off of her feet "a little bit." She claimed that she told the police the truth, but exaggerated the number of strikes and the choke hold on Tara because she thought her parents might divorce and she was on her mother's side. She did not know how many times Tara was hit. She did not remember telling the police that Tara had red marks on her neck. She offered the statement that Tara bruises easily.

### The Mother's Testimony

Wanda Jeanice Goulart verified the discipline procedure used by the family. She testified that she only saw part of what took place. It was her testimony that the marks were all over Tara because Tara was moving and putting her arms down attempting to block the blows. She testified that Tara did say she could not breathe on the couch, but this was only to get out of being punished. She did not remember Tara telling her that she had wet her panties. She had forgotten that Tara had been slapped on the face and thus knocked onto the couch, but admits that this is what she saw take place. She downplayed the neck marks stating that Tara bruises easily, but admitted that Goulart must have done something to make the marks. It was her testimony that Tara knew she would get more "licks" if she moved, that the spanking was not that bad, and that she thinks the marks are not that terrible. When confronted with the picture of Tara's back which showed a mark in the shape of the leash handle, she stated that Tara bruises easily. She verified that the prior spanking, which resulted in bruises and in Tara wetting her panties, had occurred. Ultimately, she admitted that this particular spanking was five times more severe than normal and that it was not justified by Tara's actions.

### Todd Woodward's Testimony

Detective Todd Woodward testified that he was the detective who took all of the statements made by the family and that he had a female detective take the photographs of the marks on Tara. He testified that Mrs. Goulart appeared afraid and asked him to take custody of guns located in the house. He could not do so, but checked to see if any of the guns were loaded and told Mrs. Goulart that it would be okay to hide them. He took the leash used for the spanking into police custody and tried, unsuccessfully, to locate a women's shelter at Mrs. Goulart's request. He also obtained the arrest warrant and arrested Goulart.

### Goulart's Testimony

David Gerard Goulart testified that he was not yelling nor was he in a rage when he spanked Tara. He stated that he was stern but was only trying to get Tara to

stand still and that he only struck her between six to eight times. He admits that he probably hit other parts of her body because she was moving and blocking him. He claimed that, when he forced Tara to look up at him, he grabbed her chin but she flinched which caused him to grab her neck. It was Goulart's testimony that he was only trying to discipline Tara and that he had no intention of giving her bruises. He stated that he would not "give in" to Tara because he was the adult. When asked if he felt that the punishment was justified, he stated that, "It went too far."

*Family Friend's Testimony*

Alicia Richardson testified that she had known the Goularts' for a long period of time and had spent time with the family on numerous occasions. She stated that Goulart never loses his temper with his children. Upon viewing the pictures of Tara's bruises and marks, she stated that she would believe Tara if Tara told her that Goulart made the marks, but that she would find it "shocking."

## APPLICABLE LAW

In order to find Goulart guilty of injury to a child, the jury was required to find that Goulart intentionally or knowingly caused bodily injury to a child who was fourteen (14) years of age or younger at the time. TEX. PEN.CODE ANN. § 22.04(a). The jury was instructed that the use of force, but not deadly force, against a child younger than eighteen years is justified if the actor is the parent and if the actor reasonably believes the force is necessary to discipline the child or to safeguard or promote the child's welfare. TEX. PEN. CODE ANN. § 9.61(a) (Vernon 1994). Goulart challenges the sufficiency of the evidence and asserts that it was error for the jury to reject the justification of reasonable discipline by the parent. He argues that the verdict was contrary to the overwhelming weight of the evidence.

*THE JUSTIFICATION OF REASONABLE DISCIPLINE*

■ Under the Texas Penal Code, a parent is justified in using force, but not deadly force, against a child under 18 years of age when and to the degree the parent reasonably believes the force is necessary to discipline the child or to safeguard or promote the child's welfare. TEX. PEN.CODE ANN. § 9.61(a). "Reasonable belief" is defined in the Penal Code as ". . . a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PEN.CODE ANN. § 1.07 (Vernon 1994). Because reasonable discipline is a justification, the State is not required to affirmatively produce evidence which refutes the claim; rather, the State has the burden to prove its case beyond a reasonable doubt. *Shaw v. State*, 995 S.W.2d 867, 868 (Tex.App.—Waco 1999, no pet.) (citing *Saxton v. State*, 804 S.W.2d 910, 913–914 (Tex.Crim.App.1991)).

*LEGAL SUFFICIENCY OF THE EVIDENCE*

■ In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State*, 975 S.W.2d 621, 624 (Tex.Crim.App.1998); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex.App.—Waco 1998, pet. ref'd). The evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 238–40 (Tex.Crim.App.1997).

*APPLICATION OF LAW TO FACTS*

■ We first look at the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt that the force used was unreasonable. The jury saw photographs of Tara's marks, bruises, and welts. They heard members of the family testify about the

events which took place and were also able to read the statements made at the time of the incident. They were able to consider the normal routine used for discipline by the family and to compare it with the events which took place during this particular occurrence. The jury also viewed the photographs of Tara. Tara would normally receive two "licks," but four if the offense was considered more serious.

The record indicates that there were many more marks and bruises than the regular four "licks" would have made according to the family's own system of discipline. The pictures show the shape of the handle of a dog leash on Tara's back as well as red marks on her neck and bruising and marks on her legs, back, and arms. The evidence allowed a conclusion that Tara was very afraid and that she wet her panties during the spanking. When viewing all the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of the crime beyond a reasonable doubt thereby rejecting Goulart's justification of the use of force by a parent for reasonable discipline. The evidence was legally sufficient.

*FACTUAL SUFFICIENCY OF THE EVIDENCE*

■ In conducting a factual sufficiency review, we examine all of the evidence impartially, discarding the prism of reviewing the evidence in the light most favorable to the verdict, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Hernandez v. State*, 938 S.W.2d 503, 512 (Tex.App.—Waco 1997, pet. ref'd). The justification of reasonable discipline is subject to a factual sufficiency challenge and review under the *Clewis* standard. *See Shaw v. State*, 995 S.W.2d 867, 868 (Tex.App.—Waco 1999, no pet.)(justification of self defense); *Ojeda v. State*, 945 S.W.2d 197 (Tex.App.—San Antonio 1997, no pet.) (justification of self defense). When performing our review,

we give due deference to the fact finder's assessment of the weight and credibility of the evidence. *Calhoun v. State*, 951 S.W.2d 803, 810 (Tex.App.—Waco 1997, pet. ref'd).

We will find the evidence insufficient only where necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407. While evidence may be in conflict, it is for the jury as trier of fact to resolve any conflicts and inconsistencies in the evidence. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982). Even where there is no conflict, the jury may give no weight to some evidence, and thereby reject part or all of a witness's testimony. *See Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim.App.1987). The jury is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

*APPLICATION OF LAW TO FACTS*

■ The jury was required to find beyond a reasonable doubt that the level of force used by the parent was not justified in this case. The jury heard testimony concerning the discipline used by the Goulart family. They heard the various and conflicting accounts of what took place when Goulart whipped Tara with the dog leash. They heard Goulart say that he did not intend to cause the bruises and marks that he inflicted upon Tara. They saw the pictures of Tara's body.

The jury heard the conflicting testimony as to the number of strikes or "licks" given. They saw the demeanor of the witnesses and heard their justifications for the events of that day. The jury heard both the mother of Tara and Goulart admit that the level of punishment applied was not justified by Tara's behavior and that the discipline went too far. They heard all members of the family say that, on the day of the event, they were scared. At that time, Mrs. Goulart was frightened enough not only to call the police, but also to go down to the station and request further assistance in getting out of her house and in the removal or hiding of guns.

The jury could have concluded that Goulart intended or knew that his actions would result in injury to Tara. Even if the jury believed that Tara "bruises easily," they could have believed that, because of the prior incident, Goulart knew the bruises would result and that Tara would feel pain and be injured. The jury could have concluded that a reasonable person would not believe that the force used against Tara was necessary to discipline her or to safeguard or promote her welfare. The verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 958 S.W.2d at 410; *Clewis,* 922 S.W.2d at 129; *Hernandez,* 938 S.W.2d at 512. The evidence was factually sufficient to sustain the verdict.

## CONCLUSION

We overrule Goulart's issues and find that the evidence was legally and factually sufficient for a rational trier of fact to find the elements of the crime of injury to a child and reject Goulart's justification of parental force used for reasonable discipline. We affirm the judgment of the trial court.