Timmy JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00158–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 18, 2001.

Decided Nov. 6, 2001.

Kaylin D. Kluge, Texarkana, for appellant.

Nicole Habersang, Assistant District Attorney, Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

A jury convicted Timmy Jackson of injury to a child. The jury assessed his punishment at five years' confinement. Jackson challenges only the legal sufficiency of the evidence.

Barbara Gladden, an investigator for the Texas Department of Protective and Regulatory Services, testified that her department received an anonymous telephone call informing them that a child had been severely burned. The call was received on July 15, 1998, and the caller stated that the child was burned on July 12, 1998. The caller only identified the child and his mother by their first names. Gladden testified that she immediately began to search for the child by visiting various housing projects and bingo halls and leaving messages at those places. Gladden testified that on July 16, 1998, the child's grandmother brought the child, two-year-old J.A., to her office. She testified J.A. had burns on his buttocks; his scrotum; the back of his left leg, up to mid calf; and the

top of his left foot. Gladden immediately removed J.A. from his mother's home and took him to the hospital emergency room. Later, J.A. was taken to the burn center at a children's hospital in another city.

Officer Steve Shelley testified that he took a voluntary statement from Jackson about a week after J.A. was removed from the home and taken to the emergency room. In his statement, which was published to the jury, Jackson stated that he was taking care of his live-in girlfriend's children on July 12, 1998, when J.A., one of the children, soiled himself. Jackson said he and J.A.'s mother had been trying to "potty train" J.A. Jackson said he took J.A. upstairs, ran some water in the bathtub, using both the hot and cold water, until the tub was one-quarter full. He took J.A.'s clothes off, then checked the water, and let J.A. stand in the tub. Jackson said that while he left J.A. in the tub to clean himself with a washcloth, he went downstairs to check on some food that was cooking. Approximately two or three minutes later, Jackson returned and told J.A. to rinse himself. Jackson then went back downstairs, but returned less than a minute later to find J.A. out of the tub. He then helped J.A. dry himself. Jackson said he did not notice anything unusual about J.A., and he had not heard J.A. make any cry or other complaint, but that later J.A.'s mother noticed that he had a blister on his left leg, which they treated with a first aid kit.

Gladden and Officer Bill Eubanks testified that they went to Jackson's home to measure the temperature of the water that ran into Jackson's bathtub. They testified that they let the hot water run for three to five minutes and measured the temperature of the water flowing from the tap and collecting in the tub. The water flowing from the tap registered at 123 degrees at its hottest; the water that collected in the tub registered 120 degrees.

Doctor Charles Barton, who treated J.A. in the emergency room, testified that J.A. suffered from second-degree burns, which is a painful burn characterized by blistering, sloughing of skin, and the risk of scarring and dysfunction resulting therefrom. He testified that the pattern of burns on J.A. was more consistent with hot water being poured on J.A., rather than J.A. having sat in or been dipped in hot water. Photographs showing the location of J.A.'s burns were identified by Barton and other witnesses. Barton testified that J.A. would have had to remain dipped in 125–degree water for one and one-half to two minutes to sustain the kind of burns he suffered. Barton also testified that the location and nature of J.A.'s burns were not consistent with J.A. standing in the tub or turning on the water himself.

In his defense, Jackson called J.A.'s grandmother, Trina Fleming, who testified that she saw J.A. in the evening of July 12, 1998, that he had been burned on his foot and part of his body, but that the burn had not yet blistered. Yolanda Crowder, J.A.'s mother, also testified that when she returned home on July 12, 1998, J.A. "had one little mark on the back of his leg." Fleming testified that J.A.'s injuries did not begin to blister seriously until about four days later, after J.A. went outside in the heat. She met with Gladden the following day.

In his own testimony, Jackson reiterated the statement he gave to police, denying that he intentionally injured J.A. He admitted, however, that J.A.'s injuries occurred while he was in Jackson's care on July 12, 1998, and that none of the other children who were home at the time could have caused the injuries.

In reviewing the legal sufficiency of evidence, we look to see whether, after

viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim.App.1993).

A person commits an offense if he (1) intentionally, knowingly, or recklessly, (2) by act or omission, (3) causes serious bodily injury, (4) to a child. *See* TEX. PEN.CODE ANN. § 22.04(a) (Vernon Supp.2001). Here, the State alleged that Jackson intentionally (and not knowingly or recklessly) committed an act (rather than an omission) that caused J.A. serious bodily injury.

The State's theory was that Jackson became enraged because J.A. soiled himself; that he carried him upstairs and put him in the tub; that he went downstairs and got boiling water from a pot where the water was being boiled to make macaroni; that he took the hot water and poured it on J.A.'s buttocks; and that the water dripped down on J.A.'s genitals and on the back of his left leg and the top of his foot.

Jackson contends the State failed to prove that he injured J.A. intentionally. His theory at trial and on appeal is that he did not burn J.A. by putting him in the tub or by pouring hot water on him. His defensive theory was that J.A. could have turned the hot water on and burned himself. Either way, Jackson contends, the evidence is insufficient to show he acted intentionally. Neither Jackson nor anyone else testified that he recklessly caused J.A.'s burns.

■ To prove its case, the State relied on its evidence that the water flowing from the tap into the bathtub never reached more than 123 degrees. Evidence showed that at such a temperature, J.A. would have had to remain exposed to the water continuously for over one and one-half minutes to suffer second-degree burns. The jury could have rationally concluded that no small child would have remained exposed to water heated to such a high temperature for more than a few seconds. Evidence showed that J.A. was capable of getting out of the tub by himself. Moreover, Jackson admitted that J.A. stood in the tub for the entire time he was there, yet there were no burns on his legs or feet except a small place on the top of one foot, and a burn on the back of the left leg at about mid calf height. Also, Barton testified that J.A.'s burns could not have been the result of his sitting in or standing in the tub.

The jury chose to believe the State's theory that Jackson poured water on J.A. that was hot enough to inflict second-degree burns. That theory is supported by evidence showing that exposure to water temperatures of 145 degrees or more for three or fewer seconds could inflict second-degree burns. In addition, Barton's testimony demonstrates that J.A.'s injuries are more consistent with hot water being poured on him, rather than with someone dipping him in hot water or causing him to stand in hot water.

Furthermore, Jackson admitted the injuries occurred while J.A. was in his care on July 12, 1998. A rational jury could have concluded beyond a reasonable doubt that Jackson caused J.A.'s injuries by pouring hot water on him.

The judgment is affirmed.