# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00171-CR

**David Burkhart, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 55460, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In 2002, appellant David Burkhart was indicted for punching A.M., his two-year-old then-stepdaughter, on her leg and pelvis, causing her serious bodily injury. *See* Tex. Penal Code Ann. § 22.04(a)(1) (West Supp. 2008). In 2004, he entered a plea of nolo contendere in exchange for deferred adjudication and was placed on community supervision for ten years. In 2007, the State filed a motion to adjudicate, alleging that appellant had committed another offense of injury to a child. After a hearing on the State's motion, the trial court found that appellant had committed the new offense, adjudged him guilty of the original offense, and sentenced him to ten years' imprisonment. Appellant argues that the evidence is insufficient to show that he committed the 2007 assault. We affirm the judgment of conviction.

In the State's motion to adjudicate, it alleged that appellant struck his stepdaughter R.H.[1] on her back with his hand. At the hearing, Olga Calderon, appellant's probation officer,

---

[1] R.H. is not related to A.M. Appellant was married to R.H.'s mother from 2006 until 2007.

testified that on July 27, 2007, appellant called her to report an incident that occurred in May 2007. He told Calderon that he had spanked R.H., and that his then-wife Christina, R.H.'s mother, had reported it to the police because she wanted a divorce. Deputy Wade Harrison of the Freestone County Sheriff's Office testified that he investigated Christina's report that appellant had injured R.H. He took Christina's statement and took photographs of marks on R.H.'s back. He testified that he "[s]aw bruising and what appeared to be possible finger marks where contact had been made with an open hand which caused bruising on the back, from the lower left back to her right shoulder." The State introduced photographs of the child's back, which appear to show two distinct bruises on R.H.'s back—one on her right shoulder and one on the left side of her lower back.

R.H. was five at the time of the incident. She testified that appellant "spanked me on the back real hard." She said he used his hands to spank her and that it hurt but that she forgot about it afterwards. She said she was not being bad when he spanked her and, when she was asked whether she had been bad earlier or whether her mother had been upset at her, she said, "I forgot about it." R.H. testified that she did not have to be disciplined while her mother was at home that day and that she did not continue to misbehave after her mother left. R.H. said she did not know if she remembered appellant "starting off at your behind" and she did not remember falling to her knees or jumping around while he tried to spank her.

Christina testified that in May 2007, she and appellant were not having marital problems. They had since divorced, and she said, "The cause of the divorce was he had beat my daughter." Christina testified that on the day of the incident, R.H. had been acting out. Christina had to go to the grocery store, and instead of taking R.H. with her, she and appellant told R.H. to lie down for a nap. Before she left, she saw appellant "pop" R.H. on the bottom about three times

2

before sending her to bed but when she came home, she saw R.H. outside playing in the sprinklers. She "thought that was unusual because I had grounded her to bed" and because appellant "usually doesn't go back on discipline," but she did not know anything had happened. That night, appellant complained that "his arm was hurting real bad," but Christina did not see any bruises on R.H.'s bottom that night. The next morning, however, Christina saw bruises "all on [R.H.'s] back, on her back and like I could see handprints and stuff on her back." She asked R.H. what had happened and then immediately called appellant, who admitted that he had spanked R.H. while Christina was gone and said that R.H. "might have been squirming." Christina testified that R.H. did not have bruises on her back before the incident and said that the bruises appeared worse in person than reflected by the State's photographs. Since making her police report, Christina filed an affidavit for non-prosecution, saying, "I really don't think that he should go to prison for what he did to my daughter."

Appellant testified that on the day of the spanking,

> [R.H.] was acting up. Christi . . . was going to go to the grocery store. And she told [R.H.] she couldn't go. And [R.H.] started throwing a fit. She got on the floor, kicking and stuff like that. And Christi asked me to correct her. I did. I spanked her on the bottom a couple of times and she went to take a nap. . . . Christi said she was going to the store. And I said okay. And I heard some commotion in [R.H.]'s room. . . . She was throwing a tantrum and whatnot, throwing stuff, like balls. She threw a toy at me. . . . So I had grabbed her right arm, told her that was not the right thing to do. And get back in bed. And soon as I did that she spit in my face. . . . Tried to spank her on her bottom and she wouldn't hold still while I was trying to spank her and I tried to swat her a couple of times. I couldn't get her. And I realized I had gotten her lower back while she was moving around. And after that I told her I would spank her again and she straightened up. So then I let her go outside and play because instead of her taking a nap, I didn't want to keep punishing her after.

3

Appellant was "shocked" by the bruises and said that it was an accident. He was asked, "Did you do these injuries," and he answered, "Not like that, no." He said he did not intentionally and knowingly cause R.H.'s injuries. He said Christina was lying when she testified that he told her that his arm hurt. He testified that he helped R.H. change into her bathing suit immediately after the spanking and that there were no marks on her back at that time. Appellant denied reacting in anger to R.H.'s spitting at him and said, "I have never found a parent that hasn't left marks. My own parents have left marks on me when I was a child. Accidents do happen." He said he and Christina were having marital problems at the time because she was staying out late with her friends and leaving R.H. in appellant's care, but he denied that he was angry about Christina's behavior. Appellant did not believe he had a temper but admitted that it was not an accident when he struck and injured A.M., his former stepdaughter and the victim in the original 2002 charge.

The trial court found that appellant intentionally or knowingly caused R.H.'s injury. We must decide whether the court's decision was supported by a preponderance of the evidence, meaning that the greater weight of credible evidence creates a reasonable belief that appellant violated a condition of community supervision. *See Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006) (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). We view the evidence in the light most favorable to the trial court's decision. *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.). Appellant acknowledges that the trial court's decision to revoke is reviewed for an abuse of discretion, *see Rickels*, 202 S.W.3d at 763, but argues that the evidence shows that he struck R.H.'s back accidentally. We disagree.

4

The evidence plainly shows that R.H. suffered bodily injury—that fact is supported by testimony by her mother and Deputy Harrison and by the photographic exhibits showing the bruises on her back. Appellant admitted that while he was attempting to spank R.H., he realized he had struck her lower back by accident. The only question, then, is whether a preponderance of the evidence shows that appellant knowingly or intentionally caused R.H.'s injuries. A person acts intentionally if he has the conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2003). A person acts knowingly if he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

Although appellant denied having a temper and said that he was not angry when R.H. threw a tantrum and spit in his face, appellant pled no contest to an earlier charge of injuring a different stepchild and admitted at the hearing that the first offense was not accidental. Appellant admitted that he struck R.H. on the lower back while he was trying to spank her, and the day after the spanking, he told his wife that R.H. "might have been squirming." However, the photographs show that R.H., who was only five years old at the time, was struck on the back at least twice—once in the lower back as appellant admitted and once on her shoulder—and with enough force to leave clear bruises and finger marks.

It is for the trial court as fact-finder to accept or reject reasonably equal competing theories of causation. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). Appellant's argument is based entirely on his own testimony that R.H.'s injuries were accidental, and he does not explain how the court's finding to the contrary is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See id.* (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App.

5

1997)); *see also Kelley v. State*, 187 S.W.3d 761, 763-64 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (jury heard evidence supporting and rebutting defendant's alternate theory; jury was entitled to consider baby's injuries and "the relative size of a three-month-old baby compared to appellant"); *Jackson v. State*, 64 S.W.3d 485, 487 (Tex. App.—Texarkana 2001, no pet.) (sufficient evidence supported verdict in favor of State's theory that defendant poured hot water on child, including fact that child was injured while in defendant's care); *Goulart v. State*, 26 S.W.3d 5, 11-12 (Tex. App.—Waco 2000, pet. ref'd) (jury heard conflicting testimony about number of strikes to child and could have concluded defendant intended or knew actions would result in injury). The trial court was entitled to consider the witnesses' demeanor, consider appellant's size relative to R.H., and weigh appellant's assertion that he only struck R.H.'s back accidentally against the photographic evidence. We cannot hold that the court abused its discretion in determining that appellant's testimony was not credible and that he knowingly caused R.H.'s injuries. We overrule appellant's sole point of error and affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   December 31, 2008

Do Not Publish