**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00187-CR**
_____

**DANIEL KEITH SPENCER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D180153-R**

**MEMORANDUM OPINION**

Daniel Keith Spencer appeals his conviction for injury to a child, A.P.[1] Tex.

Penal Code Ann. § 22.04(f). Following a joint bench trial with co-defendant Donald

Glenn Brown, the trial court found Spencer and his co-defendant guilty of reckless

---

[1] We refer to the victim and her family members by their initials to conceal their identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

1

injury to a child, A.P., for whom they acted as guardians. In three issues on appeal, Spencer argues that the evidence is insufficient to support the conviction to prove that Spencer was the perpetrator of the injury, that the acts alleged were reckless and not reasonable discipline of a child, and reversible error occurred when the State failed to provide exculpatory evidence in violation of statutory and constitutional requirements. We affirm.

## Background

In February 2017, A.P. went to her school nurse's office requesting an ice pack. A.P. told the nurse, Jennifer Stanley, that she needed the ice pack for a bruise that hurt. Upon examination, the nurse discovered "significant" bruising on A.P.'s body on her "hip, buttocks, [and] leg." A.P. said the bruises were a result of a spanking she received for lying. She told the nurse that her "foster dad" gave her the spanking. A.P. explained that she received a spanking, with a belt, the night before. The nurse took pictures of the bruises and the pictures were admitted at trial. During cross-examination, the nurse testified that the bruises were not likely to cause serious permanent disfigurement or substantial risk of death. She also agreed that she does not have any expertise in dating bruises, and she did not know if the bruises were the result of one spanking or spankings over multiple days. The nurse stated A.P. also made statements that "she wasn't sure if [the bruises] were all from the whipping." Stanley initially testified that A.P. did not indicate what they spanked

2

her with, but the bruises were "linear[,]" so it appeared to be "maybe something linear." Ultimately, Stanley testified that upon further questioning, A.P. told her she was whipped with a belt, which Stanley acknowledged was not included in her prior statement.

A.P.'s mother, D.P. testified that she voluntarily placed A.P. with Spencer and his partner Donald Brown in December 2016.[2] D.P. stated that she placed A.P. with Spencer and Brown because A.P. was caught abusing her younger sister, and because A.P. had been having significant behavioral issues at school. While A.P. lived with Spencer and Brown, she continued to attend the same school. In February 2017, a worker with the Department of Family and Protective Services contacted A.P.'s mother regarding A.P. According to D.P., the Department stated that A.P. had been abused and it was discovered by the school nurse that she was "covered [with marks and bruising] from her rib cage down to her knee, all the way around her body[.]" Mother stated that she had spanked A.P. in the past, but A.P. had never had bruises like those in the past or since. After D.P. was contacted by the Department, she immediately terminated the arrangement with Spencer and Brown. A.P. has remained with Mother since that day. At a recommendation of the Department, Mother filed criminal charges against Spencer and Brown.

---

[2] D.P. testified that she filled out paperwork to allow Spencer and Brown to be A.P.'s guardians.

A.P. testified that she currently lives with her "mama, … my sister and my dogs[.]" She stated that when she was "7 or 8," she was sent to live with Spencer and Brown. She stated that she stopped living with Spencer and Brown because "they were beating me." According to A.P., Spencer and Brown would use either a leather belt or sticks from outside, but she did not remember which one would spank her. She stated that when Spencer and Brown would spank her, "it felt bad, like, it hurt really bad." In February 2017, A.P. told her teacher that she could not "sit down" and the teacher sent her to the school nurse. She testified she could not remember what she told the school nurse about her bruises.

The Department investigator Kellie Lambert testified she investigated the allegation of physical abuse of A.P. Lambert stated she personally observed bruising on A.P.'s buttocks, upper thighs, and right hip. Lambert discovered that A.P.'s mother signed a "nonparent voluntary caregiver form" voluntarily allowing Spencer and Brown to care for A.P. Lambert contacted Spencer and Brown regarding the abuse allegations. Lambert testified to the following about her conversation with Spencer,

> [THE STATE:] Did you have an occasion to -- to speak with either Mr. Brown or Mr. Spencer regarding the allegations?
>
> [LAMBERT:] I did. After I left the school, where I also found out who [A.P.]'s mother was, I went to her home. And I made a phone call to Mr. Spencer first, and I was able to speak with him about the allegations.

4

[THE STATE:] And did -- how did Mr. Spencer respond to your conversation with him?

[LAMBERT:] He was calm. I told him, you know, what the allegations were and what we'd observed and I asked him had they spanked [A.P.] and he said that they had spanked [A.P.]. I asked him if he thought it was excessive, and he said he thought that it was a little excessive this time. He confirmed what [A.P.] had said why she got in trouble, for lying; but he said there were also other things, you know, combined with that. And that was basically the gist of our conversation.

[THE STATE:] So, in your conversation with him, though, Mr. Spencer said that he felt the whipping was excessive?

[LAMBERT:] Yes. On this date, yes.

She indicated she ended her investigation with "the disposition of reason to believe physical abuse occurred, and that was on Mr. Donald Brown and Mr. Daniel Spencer." During cross-examination, Lambert testified that she is not familiar with the law in Texas regarding corporal punishment for discipline, but from the Department's "point of view…parents are allowed to discipline their children as long as it's not excessive and doesn't leave marks or bruises on their body." When asked about whether spankings over a period of weeks or months could have caused the bruising, Lambert said it was "based on what [A.P.] told me on when it happened." Lambert did not have A.P. see a doctor, did not collect medical records, and did not have testing done to see if A.P. had a disorder that caused her to bruise easily. Lambert agreed that if a large amount of force is used when spanking, it will normally leave a bruise. Lambert testified that CPS relies on parents to provide

5

information about medications or medical conditions that might increase the risk or severity of bruising, and D.P. denied A.P. had those conditions. Lambert outlined the remaining steps in her investigation, which included sending photographs to the Forensic Assessment Center Network ("F.A.C.N.") physician. Lambert concluded there was "reason to believe" physical abuse occurred by Brown and Spencer.

Leonard Smith, who worked as a Vidor Police Department detective sergeant at the time of the incident, also testified. Smith investigated the February 2017 injury to a child case and became involved about three weeks after A.P. initially met with the school nurse. Smith explained he received a report indicating it involved spanking, then looked at the pictures. When he realized the suspects had not provided statements, he contacted them to see whether they wanted to provide a statement. Smith testified he spoke with Brown, explained the allegations against him, and told Brown he would allow him to share his side of the story. Brown told Smith they spanked A.P. but said gymnastics and a medical disorder caused the bruising. Smith testified that Brown and Spencer made an appointment to provide a statement but did not keep it, so Smith called again, and they told him they had spoken to their attorney and did not wish to provide a statement. According to Smith, at that point, he could do nothing else, so he gathered the information from CPS and Garth House and filed the case with the D.A.'s office. Smith testified he did not have a doctor examine A.P. and never talked to A.P. because, given her age, Garth House

6

conducted the interview. The Garth House interview occurred three weeks after the incident, which Smith observed, but nobody mentioned gymnastics during the interview.

Smith testified that he regularly told people that the law allows parents or guardians to discipline their children if it does not involve deadly force. He agreed this case did not involve serious bodily injury or death. Smith testified that D.P. allowed Brown and Spencer to act as parents, which included discipline.

J.K., a family friend, testified that she has known A.P. and her mother for "seven or eight years." She described her relationship with A.P.'s mother as "family" and stated that in February 2017, she picked up A.P. from school after the bruises were discovered on her body. She testified that the bruises were "pretty bad[,]. . . [A.P.] was black and blue[]" with bruises on her lower back, side, down one of her thighs, and across her bottom. She said she contacted Brown over social media and that Brown stated "[d]id we spank her too hard? Probably; but not to the extent that you or [D.P.] have described[.]"

At the conclusion of the trial, the trial court found Spencer guilty of Injury to a Child and sentenced him to two years confinement in the Texas Department of Criminal Justice but suspended the sentence and placed Spencer on community supervision for two years, along with fines and court costs. Spencer filed a motion for new trial. In his motion for new trial, Spencer complained the State failed to

provide additional photographs taken after this incident and a photograph taken a couple months earlier that showed similar bruising. Spencer also argues that the State failed to provide him with information regarding a CPS investigation involving similar allegations of abuse in December 2016 where the same F.A.C.N. physician involved in this case ruled out abuse in the earlier case.

**Issues One and Two: Sufficiency**

In his first two issues, Spencer challenges the sufficiency of the evidence. We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318–19). In a bench trial, the trial judge is the sole trier of fact and judge of the witnesses, and the trial court may choose to believe or disbelieve some or all of the witnesses who testified. *See Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978). We defer to the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to

8

ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19).

In this case, to find Spencer guilty of injury to a child, the trial court was required to find that Spencer recklessly caused bodily injury to a child fourteen years of age or younger. *See* Tex. Penal Code Ann. § 22.04(a)(3), (c). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). Injury to a child is a result-oriented crime, requiring a mental state that relates not to the specific conduct but to the result of that conduct. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Here, the trial court had to determine whether Spencer acted recklessly.

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(c); *see also Williams*, 235 S.W.3d at 750. "Mental culpability usually must be inferred from the circumstances of the act or words." *Kelley v. State*, 187 S.W.3d 761, 763 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998)); *see also Assiter v. State*, 58 S.W.3d 743, 748 (Tex. App.—Amarillo 2000, no pet.). It may also be inferred from the extent of injury and the parties' relative size and strength.

9

*Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Kelley*, 187 S.W.3d at 763. "The extent of a victim's injuries is a reflection of the strength of a defendant's attack, and therefore involves the defendant's conduct." *Kelley*, 187 S.W.3d at 763.

Spencer raised the justification of reasonable discipline by a parent or someone acting "in loco parentis[.]" *See* Tex. Penal Code Ann. § 9.61(a). "In loco parentis" includes individuals acting as guardians or "anyone who has express or implied consent of the parent[.]" *Id.* § 9.61(b). Texas law states that "[t]he use of force, but not deadly force, against a child younger than 18 years is justified: (1) if the actor . . . is acting in loco parentis to the child; and (2) when and to the degree the actor reasonably believes the force is necessary to discipline the child[.]" *Id.* § 9.61(a). The Texas Penal Code defines "reasonable belief" as ". . . a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

Since reasonable discipline is a justification, the State does not have to affirmatively produce evidence refuting the claim; instead, the State must prove its case beyond a reasonable doubt. *Goulart v. State*, 26 S.W.3d 5, 10 (Tex. App.—Waco 2000, pet. ref'd); *see also* Tex. Penal Code Ann. § 9.02 (providing that justification is a defense). A guilty finding is an implicit finding against the defensive theory. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). A parent's

10

use of force under section 9.61 is not justified simply based on their subjective belief, "rather, the use of force is justified only if a reasonable person would have believed the force was necessary to discipline the child or to safeguard or promote the child's welfare." *Quattrocchi v. State*, 173 S.W.3d 120, 122 (Tex. App.—Fort Worth 2005, pet. ref'd) (emphasis omitted) (quoting *Assiter*, 58 S.W.3d at 748). "Reasonable belief" is an objective standard. *See id.*; *see also* Tex. Penal Code Ann. § 1.07(a)(42).

Spencer first complains that the evidence was insufficient to establish he was the perpetrator, as A.P. only complained that "they" spanked her. However, the trial testimony established that "they" included Brown and Spencer. Specifically, A.P. testified that she lived with Brown and Spencer, and she stopped living with them, "[b]ecause they were beating me." Lambert identified the alleged perpetrators as Brown and Spencer. Stanley also testified that A.P. reported to her that her "foster dad" spanked her. Additionally, the CPS investigator testified that Spencer told her "they" spanked A.P. and acknowledged it was excessive. Finally, J.K. testified that Brown himself sent a message to her acknowledging "we" probably spanked A.P. too hard. A.P. also testified they would use a belt or "sticks," and Stanley testified that A.P. reported they used a belt. Viewing this evidence in the light most favorable to the verdict and deferring to the factfinder's role to resolve conflicts in testimony and weigh the evidence, we conclude the evidence was sufficient to support that

Spencer committed the alleged acts. *See Temple*, 390 S.W.3d at 360; *Hooper*, 214 S.W.3d at 13. We overrule issue one.

Spencer next complains that the evidence is insufficient to establish the acts constituting the offense were reckless and not reasonable discipline of the child. It is undisputed that at the time of the offense Brown and Spencer acted in loco parentis. As explained above, the evidence showed that both Brown and Spencer acknowledged they spanked A.P. A.P. testified that nobody has spanked her like Brown and Spencer, and when Brown and Spencer spanked her, "it hurt really bad."

Evidence at trial included photographs depicting substantial bruising on A.P.'s bottom, legs, and hip. Multiple witnesses also testified regarding the extensive bruising A.P. sustained. Stanley's testimony established that A.P. experienced pain that required her to seek treatment from the nurse and an ice pack. *See* Tex. Penal Code Ann. § 1.07(a)(8) (definition of "bodily injury" includes "physical pain"). The nurse testified that A.P. said she was whipped with a belt and described linear bruising. The nurse also testified that given the bruising, she reported the incident to CPS the same day.

Lambert testified that from CPS's point of view, "parents are allowed to discipline their children as long as it's not excessive and doesn't leave marks or bruises on their body." Lambert agreed that if a large amount of force is used when spanking, it will normally leave a bruise. When asked about whether spankings over

a period of weeks or months could have caused the bruising, Lambert said it was "based on what [A.P.] told me on when it happened." D.P. denied that A.P. ever had issues with bruising or had similar bruises before or since the incident, even though she had spanked A.P. Likewise, J.K. testified that she had not seen similar bruises on A.P. since. Stanley was aware that certain disorders could cause people to bruise more easily, but she did not have any documentation to indicate that being the case for A.P. Stanley testified she would not know if the bruising was all from one spanking or multiple spankings over multiple days.

Again, viewing the evidence in the light most favorable to the verdict, we conclude the trial court could have found the essential elements of the offense beyond a reasonable doubt and thereby rejected Spencer's justification of the use of force by a guardian for discipline or to safeguard or promote the child's welfare. There was ample evidence to support the trial court's finding that Spencer recklessly caused bodily injury to A.P., who was then younger than fourteen. *See Ezeh v. State*, No. 06-18-00141-CR, 2019 WL 1141249, at *3 (Tex. App.—Texarkana Mar. 13, 2019, pet. ref'd) (mem. op., not designated for publication) (determining same under similar facts). A.P. reported pain in her legs and hip the day after the incident and requested an ice pack from Stanley, who observed "significant" bruising. The bruises were linear in nature which supported that a linear object was used. A.P. relayed to the nurse that she had been whipped by her "foster dad" the day before.

13

The trial judge heard testimony to this effect and testimony that Brown acknowledged "we" spanked the child. The trial judge saw photos of A.P.'s injuries, heard from school staff that she was in pain a day after the incident, and heard testimony from a CPS caseworker that when a large amount of force is used in spanking it usually leaves a bruise.

Thus, the trial evidence would allow a rational factfinder to conclude that Spencer recklessly caused bodily injury to A.P. Further, the evidence supported the factfinder's implicit rejection of the defensive theory and a determination beyond a reasonable doubt that an ordinary and prudent person in the same circumstances as Spencer would not have disciplined A.P. by using a belt to repeatedly whip her, leaving multiple visible bruises. Accordingly, we conclude the evidence is sufficient to support the verdict. *See Goulart*, 26 S.W.3d at 10–12 (evidence, including photographs and testimony concerning strikes given, was sufficient to sustain verdict and rejection of parental discipline justification); *Assiter*, 58 S.W.3d at 748–51 (evidence, including testimony concerning bruising after spanking, was sufficient for factfinder to reject parental discipline justification). We overrule issue two.

**Issue Three: Exculpatory Evidence**

In his third issue, Spencer complains the State failed to provide exculpatory evidence in violation of statutory and constitutional requirements. Spencer contends

this evidence included photographs and a 2016 report including a physician's finding that "almost identical markings" to the child resulted in a finding of no abuse.

Spencer raised these complaints in a Motion for New Trial. We review a trial court's denial of a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold it if it falls within the zone of reasonable disagreement. *Id.* We do not substitute our judgment for the trial court's; instead, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

In his Motion for New Trial and on appeal, Spencer outlines several pieces of evidence he claims were exculpatory that the State withheld. These include: (1) a CPS investigation report into a December 2016 allegation that Brown physically abused A.P. by spanking;[3] (2) an accompanying photograph from the December 2016 investigation; and (3) additional photographs from CPS's February 2017 investigation. Spencer contends CPS had this information in its file, and it was available to law enforcement.

A *Brady* violation occurs when the State suppresses, willfully or inadvertently, evidence favorable to the defendant. *Harm v. State*, 183 S.W.3d 403,

---

[3] Spencer's appellate brief refers to this as a "letter" but the record cite indicates it is part of a CPS report containing the F.A.C.N. physician's opinion.

406 (Tex. Crim. App. 2006); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a defendant must show that (1) the prosecutor failed to disclose evidence, (2) the evidence is favorable to the accused, and (3) the evidence is material. *Harm*, 183 S.W.3d at 406.

Prosecutors have a duty to learn of *Brady* evidence known to others acting on the State's behalf in a particular case. *Harm*, 183 S.W.3d at 406. *Brady* does not require prosecutors to disclose exculpatory information that the State does not have in its possession and that is not known to exist. *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011); *Harm*, 183 S.W.3d at 407. Similarly, the State does not have a duty to disclose if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources. *Pena*, 353 S.W.3d at 810. Under *Brady*, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is one that undermines confidence in the outcome. *Id.*

Texas Code of Criminal Procedure article 39.14 places an affirmative duty to disclose any exculpatory, impeachment, or mitigating document, item, or information in its possession, custody, or control that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged. *See* Tex. Code Crim. Proc. Ann. art. 39.14(h). The Legislature did not limit article 39.14(h)'s

16

applicability to "material" evidence, so this duty to disclose is broader than the prosecutor's duty to disclose as a matter of due process under *Brady*. *See Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). The word "material" appearing elsewhere in article 39.14 means "having a logical connection to a consequential fact" and is synonymous with "relevant" considering the statutory context. *See id.* at 290. If the State fails to comply with article 39.14 by not turning over evidence, we must conduct a harm analysis. *See id.* at 291 (determining the State failed to turn over exhibits in violation of 39.14 and remanding case to court of appeals for harm analysis); *Sopko v. State*, 637 S.W.3d 252, 256 (Tex. App.—Fort Worth 2021, no pet.) (requiring a harm analysis if a trial court abuses its discretion in violation of 39.14). We disregard any non-constitutional error that does not affect an appellant's substantial rights. *See* Tex. R. App. P. 44.2(a). In nonjury proceedings, to determine if an error implicated a substantial right, we consider "whether a party had a right to that which the error denied." *Johnson v. State*, 72 S.W.3d 346, 348–49 (Tex. Crim. App. 2002); *Sopko*, 637 S.W.3d at 257. If the error implicated a substantial right, we examine the entire record to determine the error's potential impact on the factfinder's decision. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Hastings v. State*, 20 S.W.3d 786, 791 (Tex. App.—Amarillo 2000, pet. ref'd) (applying standard to nonjury proceeding).

17

For purposes of our analysis, we will assume without deciding that the State failed to turn over favorable or exculpatory evidence under *Brady* and article 39.14. During the evidentiary hearing on the Motion for New Trial several witnesses testified including a CPS attorney, Lambert, and Stanley. After the trial, the defense subpoenaed the CPS records described above, and a CPS attorney presented them during the hearing on the Motion for New Trial for in camera inspection. Additionally, the State provided the discovery logs showing that Brown's attorneys downloaded the 2017 CPS report Lambert prepared prior to trial that included Brown's previous CPS history with A.P., and Spencer's attorney acknowledged receiving the 2017 report. Specifically, the 2017 CPS report indicated that in December 2016, A.P. outcried after a spanking, CPS investigated, and a F.A.C.N. physician ruled out physical abuse in that case and determined despite A.P.'s report "that her bruising was the result of a spanking she received, the spanking and bruising were not connected. It would be impossible for her to get bruising on her upper front thigh when she g[o]t spankings while laying face down on an ottoman." The F.A.C.N. physician "reported that the 'bruising' looked more like an allergic reaction to something and believes that is the source of the marks."

Spencer also complains that the State failed to provide him with various photographs. With respect to the additional 2017 photographs that Spencer mentions, some showed A.P.'s injuries from different angles while she wore

different clothing.[4] CPS took a photograph during the December 2016 CPS investigation which showed a large patch of red skin on the front of A.P.'s thigh that appeared to be a rash with diffuse bruising along the outer edges.

Spencer contends the F.A.C.N. physician's previous determination of no abuse under similar circumstances with similar injuries was significant. However, even if he did not have the 2016 CPS report, the record establishes that Spencer had this information prior to trial as it was contained in the 2017 CPS report. We also note that none of the F.A.C.N. physician's opinions were introduced at trial, the F.A.C.N. physician did not testify, and no CPS reports containing her opinions that this instance of spanking constituted abuse were admitted into evidence during trial.[5]

As previously noted, the additional photographs from the February 2017 investigation were cumulative as they showed the same injuries as those admitted during trial. The single photograph from 2016 shows what appears to be a rash on the front of A.P.'s thigh, surrounded by diffuse bruising, where the F.A.C.N. physician ruled out abuse. Despite Spencer's contrary characterization of the 2016 photograph, this was dissimilar from the linear and patterned bruising predominantly on A.P.'s bottom, lower back, hips, and side that resulted from the February 2017 spanking.

---

[4] All photographs were sealed in the record.
[5] The CPS reports were admitted only during the hearing on the motion for new trial.

Evidence adduced at trial showed that Brown and Spencer admitted to spanking A.P. on this occasion. A witness testified that Brown acknowledged they had "probably" spanked A.P. too hard, and another witness testified Spencer acknowledged the spanking was excessive. Further, the evidence established that these injuries were patterned and linear in nature, as distinguished from the rash-like appearance on the front of A.P.'s thigh that resulted in CPS ruling out abuse in 2016.

Assuming without deciding that the State failed to turn over the complained-of evidence, we conclude Spencer has failed to show under *Brady* that even if the evidence had been disclosed, there is a reasonable probability the outcome would have been different. *See Bagley*, 473 U.S. at 682. We further determine that the State's failure to disclose evidence in violation of article 39.14, if any, was harmless. *See Watkins*, 619 S.W.3d at 291; *see also* Tex. R. App. P. 44.2(a). We overrule this issue.

## Conclusion

Having overruled Spencer's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 8, 2022
Opinion Delivered June 8, 2022
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

20